UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

IN RE:                          )
                                )
ACA Real Estate LLC,            )      Case No. 08-51055C-11W
                                )
          Debtor.               )
                                )

MEMORANDUM OPINION

This case came before the court on June 18, 2009, for hearing on a motion by GBM & Associates Investments, Inc. ("GBM") for a determination of the amount of its claim and the Debtor's objection to the proof of claim filed by GBM. Having considered the evidence offered at the hearing and the arguments of counsel, the court makes the following findings of facts and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52 of the Federal Rules of Civil procedure.

JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. The matters before the court are core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(A) and (B) which this court may hear and determine.

FACTS

This is a Chapter 11 case in which the Debtor is the owner of an office building which the Debtor values at $2,200,000. The

office building is subject to a first-lien deed of trust that secures a purchase money promissory note held by GBM dated June 7, 2005, in the original amount of $1,000,000, with interest "from the date hereof at the rate of Six and no/100 per cent (6.00%) per annum on the unpaid balance until paid or until default. . . ." The note calls for 59 equal monthly installments of principal and interest in the amount of $8,438.37, beginning on July 1, 2005, and continuing on the first day of each month through May 1, 2010, with a final payment of the remaining unpaid balance, plus all accrued interest thereon, due on June 1, 2010.

The note contains two provisions that are applicable in the event of a default. One of these provisions deals with the interest rate and provides that "[t]he unpaid principal of this Note and any part thereof, accrued interest and all other sums due under this Note and the Deed of Trust, if any, shall bear interest at the rate of ten per cent (10.00%) per annum after default until paid." The other such provision provides that in the event of a default, the holder of the note may employ an attorney to enforce the holder's rights and remedies and that in such event the Debtor agrees to pay "reasonable attorney fees not exceeding a sum equal to fifteen per cent (15%) of the outstanding balance owing on the said Note, plus all reasonable expenses incurred by the holder in exercising any of the holder's rights and remedies upon default."

A default under the promissory note occurred prior to October

- 2 -

of 2007, and GBM initiated a foreclosing proceeding in the Superior Court of Forsyth County.  On June 26, 2008, prior to the completion of the foreclosure proceeding, the Debtor commenced this Chapter 11 case.  On October 23, 2008, the Debtor filed a proposed plan of reorganization and a disclosure statement.  Following several amendments, the disclosure statement was approved by an order entered on January 12, 2009.  Following a contested confirmation hearing on March 5, 2009, an order was entered on March 17, 2009, confirming the Debtor's plan of reorganization with the modifications set forth in the confirmation order ("Plan").

GBM filed a timely proof of claim which was filed as a secured claim in the amount of $945,510.53 as of the petition date, consisting of principal of $915,482.31, interest of $6,280.72, prepetition attorney fees of $23,072.00, substitute trustee's fee of $250.00, court costs of $75.00, service fee of $15.00, and legal advertising costs of $335.50.  In addition to these prepetition amounts, GBM claims that as an oversecured creditor, its allowed claim also should include postpetition attorney fees and interest from the petition date to the effective date of the Plan.  The Debtor objected to the amount of the proof of claim filed by GBM, as well as to the amounts claimed by GBM for postpetition attorney fees and postpetition interest.

ANALYSIS

By the time of the hearing on June 18, 2009, the only matters

- 3 -

that remained in dispute were the amount of GBM's prepetition attorney fees, the amount of its postpetition attorney fees and the amount of the postpetition interest due GBM.

It is undisputed that GBM is oversecured by a considerable margin and that the promissory note issued by the Debtor provides for the recovery of attorney fees in the event of a default by the Debtor.  It likewise is undisputed that there was a prepetition default by the Debtor.  Thus, the only matter for determination regarding the attorney fees was the amount of the attorney fees to be included in GBM's allowed claim.  Based upon findings and conclusions that were stated on the record, the court ruled that GBM was entitled to include in its claim prepetition attorney fees of $23,072.00 and postpetition attorney fees and expenses of $32,486.35.  This left for resolution the portion of GBM's claim involving interest on its prepetition claim for the period measured between the petition date and the effective date of the Plan, i.e., the postpetition interest.

The parties do not dispute that if a claim in a Chapter 11 case is oversecured, section 506(b) permits the holder of the oversecured claim to recover postpetition interest.[1]  What is in dispute is the interest rate that should be applied in computing the postpetition interest.  GBM contends that the postpetition interest should be 10%, while the Debtor argues that the applicable

---

[1]See 4 Collier on Bankruptcy ¶ 506.04[2] (15th ed. rev. 2009).

- 4 -

rate is 7%.  In arguing that the interest rate should be 7%, the Debtor does not dispute that the promissory note provides for a 10% interest rate upon default.  Instead, the Debtor argues that there are provisions in the Plan that are controlling with respect to the postpetition interest rate and that set the postpetition interest rate at 7%.

In some cases, the rights of an oversecured creditor with respect to interest or attorney fees under section 506(b) may be altered by the provisions of a confirmed plan.  See In re The Aspen Street Corp., No. 07-10858ELF, May 29, 2009, 2009 WL 1514304 (Bankr. E.D. Pa.).  See also Behles-Giddens, P.A. v. Raft (In re K.K. Co.), 254 B.R. 480, 489 (10th Cir. BAP 2000)(confirmed plan is binding even if its provisions conflict with the Bankruptcy Code).  This, however, is not such a case.  The provisions of the Plan in this case are insufficient to effect such an alteration and, additionally, such an alteration would be inappropriate given the circumstances under which confirmation was obtained by the Debtor.

According to the Debtor, the provisions of the plan that relegate GBM to the 7% interest rate are contained in Article VII of the Plan which provides:

7.1 Description of Classes.  Class 3 is comprised of all Allowed Claims of GBM & Associates Investments, Inc.

7.2 Treatment of Claims.  Interest on Class 3 debt shall accrue at the rate of 7% per annum.  Debtor shall amortize the debt to class 3 over a period of 10 years. Payments shall be made monthly, beginning on the Effective Date.  Class 3 shall retain its lien.

- 5 -

The Debtor argues that the language in paragraph 7.2 stating that "[i]nterest on Class 3 debt shall accrue at the rate of 7% per annum" is determinative of the interest rate for the postpetition/pre-confirmation period at issue.  GBM argues that the language in paragraph 7.2 specifies the interest rate to be paid through the post-confirmation periodic payments required following the confirmation of the Plan, and has nothing to do with quantifying the claim that is to paid in the manner described in paragraph 7.2.  The court agrees with GBM's interpretation of paragraph 7.2 of the Plan.  Article VII of the plan is entitled "Treatment of Allowed Claim of GBM & Associates Investments, Inc." According to this title, Article VII pertains to the "treatment" of the allowed claim which, of course, occurs only after a plan is confirmed.  Neither the title nor the Plan language itself conveys the idea that the language in Article VII is controlling with respect to the manner in which the allowed claim that is to be treated under the plan is to be determined.  The court, therefore, rejects the Debtor's argument that the applicable interest rate for the period between the petition date and the effective date is controlled by Article VII of the Plan.

There is language in the Plan that could be interpreted as disallowing <u>any</u> postpetition interest for GBM.  The Plan, however, is ambiguous regarding this point and, additionally, such a reading of the Plan would be at odds with arguments made by the Debtor

- 6 -

during the confirmation hearing.  An ambiguity arises from the fact that there are two different definitions of "Allowed Claim" in the Plan and the disclosure statement.[2]  For the reasons that follow, the court has concluded that the Plan should not be interpreted as disallowing postpeitition interest for GBM.

GBM filed a timely objection to confirmation of the plan proposed by the Debtor.  One ground of objection raised by GBM was that the Plan did not meet the best interest of creditors requirement embodied in section 1129(a)(7) of the Bankruptcy Code. The Debtor's response to this objection was that the objection should be overruled because the Plan was intended to provide GBM with a 100% payment of its claim.  If not explicit, it was implicit in the Debtor's position that 100% meant an allowed claim equal to what GBM would receive in a Chapter 7 liquidation since that is what would be required under section 1129(a)(7).  This was the court's understanding of the Debtor's position and the basis on which the court overruled GBM's section 1129(a)(7) objection.  In a Chapter 7 case, GBM, as an oversecured creditor, would be entitled to postpetition interest on its claim.  In re White, 260 B.R. 870, 879 (8th Cir. BAP 2001).  To interpret the Plan as precluding any postpetition interest would be contrary to the

---

[2]The definition in the Plan states that Allowed Claim shall not include postpetition interest, while the definition in the disclosure statement states that Allowed Claim shall include section 506(b) expenses to the extent authorized under section 506(b).

position taken by the Debtor in order to obtain confirmation of its plan, and the court is not willing to adopt such an interpretation.

The issue that remains is the rate that should be applied in computing the postpetition interest. Most courts have concluded that "postpetition interest should be computed at the rate provided in the agreement, or other applicable law, under which the claim arose—the so-called contract rate of interest." 4 Collier on Bankruptcy ¶ 506.04[2][b] (15th ed. rev. 2009). However, where the agreement provides for default interest, an issue may arise as to whether the postpetition interest should be computed at the default rate or the pre-default rate. In most jurisdictions, there is a presumption in favor of the contractual default rate, subject to rebuttal based on equitable considerations. See e.g., In re Terry Limited Partnership, 27 F.3d 241, 243 (7th Cir. 1994); In re Laymon, 958 F.2d 72, 75 (5th Cir. 1992); In re Dixon, 228 B.R. 166, 173 (Bankr. W.D. Va. 1998); In re Bohling, 222 B.R. 340, 342 (Bankr. D. Neb. 1998). See also 4 Collier on Bankruptcy ¶ 506.04[2][b][ii] (15th ed. rev. 2009).

The court is satisfied that GBM most likely would receive the default rate in a hypothetical Chapter 7 liquidation and should receive the default rate in this case. Because the Debtor is solvent, with equity that exceeds all of its indebtedness, the Plan in this case provides for a 100% payout to the unsecured creditors. The same result would occur in a Chapter 7 liquidation. Thus, the

- 8 -

other creditors would not in a Chapter 7 case, and will not in this case, be prejudiced by GBM receiving the default rate.  No other equitable considerations have been raised against the presumption in favor of the contractual default interest rate.  Accordingly, GBM will be allowed postpetition interest at the contractual 10% rate.

The parties have stipulated that if a 10% interest rate is utilized for such period, the correct amount due GBM is $956,728.06, not including the postpetition attorney fees of $32,486.35 that have been allowed.  Thus, GBM's total allowed claim is in the amount of $989,214.41.  An order so providing is being entered contemporaneously with the filing of this memorandum opinion.

This 14th day of July, 2009.

_William L. Stocks_
WILLIAM L. STOCKS
United States Bankruptcy Judge

- 9 -

PARTIES TO BE SERVED:

Michael D. West
POB 1828
Greensboro, NC 27402

William P. Janvier
POB 911
Raleigh, NC 27607-0911

R. Bradford Leggett
POD 5129
Winston-Salem, NC 27113-5129